IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ANTOINETTE MORRIS, *et al.*,

        Plaintiffs,

v.                                                                         Civil Action No. 3:17cv195

GENERAL INFORMATION
SERVICES, INC., *et al.*,

        Defendants.

## MEMORANDUM OPINION

This matter comes before the Court on Defendant United States Postal Service's ("USPS") Motion to Dismiss. (ECF No. 10.) Plaintiffs Antoinette Morris and Jaylen Cotman ("Plaintiffs") responded and USPS replied. (ECF Nos. 21, 23.) Accordingly, the matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. The Court exercises jurisdiction pursuant to 28 U.S.C. § 1331.[1] For the reasons that follow, the Court will grant the Motion to Dismiss.

### I. Factual and Procedural Background

#### A. Summary of Allegations in the Complaint[2]

Plaintiffs each applied for positions with USPS in October 2014 and September 2015. As part of its hiring process, USPS conducts background checks on applicants. In order to gain

---

[1] "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Plaintiffs' Complaint alleges violations of the Fair Credit Reporting Act (the "FCRA"), 15 U.S.C. §§ 1681a–x.

[2] For purposes of the Motion to Dismiss, the Court will assume the well-pleaded factual allegations in the Complaint to be true and will view them in the light most favorable to Plaintiffs. *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

authorization to procure a background check, USPS provides applicants with Form 2181-A, which the applicants sign and return. USPS provided both Plaintiffs with Form 2181-A, which they signed and returned.[3]

Form 2181-A is a single page and contains seven paragraphs. The first paragraph consists of instructions detailing how to fill out the form and where to mail it once complete. The second, titled "Privacy Act Statement," states that "your information will be used to determine your suitability for employment," indicates the federal statutes that authorize collection of this information, explains that "[p]roviding this information is voluntary, but if it is not provided you may not receive full consideration," and lists the entities to which USPS may disclose such information and under what circumstances. (Am. Compl. Ex. 1, ECF No. 3-1.) The third paragraph explains that the form constitutes the "consent and authorization" of the applicant to "the disclosure or furnishing" of his or her records or information to individuals within the government "as may be relevant and necessary for a determination of [her or his] suitability for employment" with USPS. (*Id.* 1.) The fourth paragraph provides that the applicant authorizes the disclosure of her or his information with the understanding that USPS will take measures to protect such information against unauthorized disclosure.

The fifth paragraph, a liability release, reads in full:

> I hereby RELEASE the aforementioned persons, corporations, agencies, associations and their employees, agents, and representatives from any and all liability for damages resulting from a decision by the USPS not to employ me on account of compliance, or any attempts at compliance with this authorization, except for any damages resulting from knowingly providing false or misleading information or records about me.

---

[3] Plaintiffs attached Form 2181-A as an exhibit to the Complaint. (ECF No. 3-1.) The Court will consider the exhibit because the document is central to the claims, is sufficiently referred to in the Complaint, and neither party contests its authenticity. *See Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396–97 (4th Cir. 2006).

(*Id.* 1.) The sixth paragraph provides that a copy of the authorization is as valid as the original and that the authorization lasts for twelve months. Directly below the sixth paragraph is the signature block. The seventh paragraph follows immediately below. It reads in full:

> According to the Fair Credit Reporting Act (FCRA, 15 U.S.C. § 1681 et seq), I am entitled to know if the considerations for which I am applying are denied because of information obtained from a consumer reporting agency. If so, I will be notified and be given the name of the agency providing that report.

(*Id.* 1.) Form 2181-A was the only document USPS provided to Plaintiffs that pertained to criminal background checks.[4] Shortly after Plaintiffs applied for employment, USPS, through General Information Services, Inc. ("GIS"),[5] procured background checks for each of them.

Plaintiffs bring the action on behalf of a proposed Class, defined as:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States), who (1) applied for an employment position with USPS within the five years immediately preceding the filing of the Complaint in this matter, (2) who executed a form substantially similar to form 2181-A as part of the USPS application process and (3) on whom the USPS obtained a background report.

(Am. Compl. ¶ 62, ECF No. 3.)

### B. Procedural History

Plaintiffs filed their First Amended Complaint, on behalf of themselves and all others similarly situated, alleging that GIS (Count I) and USPS (Count II) willfully violated the FCRA

---

[4] Plaintiffs attached to their Response to the Motion to Dismiss declarations of Cotman and Morris. The Court will not consider the allegations made in either of these declarations to the extent they seek to expand on or add to allegations in the Amended Complaint. *See, e.g.*, *Katz v. Odin, Feldman & Pittleman, P.C.*, 332 F. Supp. 2d 909, 917 (E.D. Va. 2004) ("[I]t is . . . 'axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.'" (quoting *Morgan Distrib. Co., Inc. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989))).

[5] In May 2017, Plaintiffs voluntarily dismissed GIS as a defendant. The Court recounts the relevant facts in the Complaint as to USPS only.

by failing "to provide a clear and conspicuous written disclosure in a document that consists solely of the disclosure to Plaintiffs that a consumer report may be obtained about her [or him] for employment purposes" and by thereby failing "to obtain from Plaintiffs a valid, written authorization to procure a consumer report for employment purposes," as required by 15 U.S.C. § 1681b(b)(2)(A).[6] (Am. Compl. ¶ 4.) Plaintiffs seek declaratory relief, statutory damages, punitive damages, and attorneys' fees, litigation expenses, and costs.

On May 1, 2017, Plaintiffs voluntarily dismissed GIS as a defendant. Accordingly, only Count II of the Amended Complaint remains. USPS moved to dismiss Count II.

## II. Legal Standard: Motion to Dismiss

In a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenging the Court's subject-matter jurisdiction, the burden rests with the plaintiff, as the party asserting jurisdiction, to prove that federal jurisdiction is proper. *See Int'l Longshoremen's Ass'n v. Va. Int'l Terminals, Inc.*, 914 F. Supp. 1335, 1338 (E.D. Va. 1996) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir.

---

[6] Section 1681b(b)(2)(A) provides in full:

Except as provided in subparagraph (B), a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless—

> (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document *that consists solely of the disclosure*, that a consumer report may be obtained for employment purposes; and[,]

> (ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

15 U.S.C. § 1681b(b)(2)(A) (emphasis added).

1982)). A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) can attack subject-matter jurisdiction in two ways. First, as here, a Rule 12(b)(1) motion may attack the complaint on its face, asserting that the complaint fails to state a claim upon which subject-matter jurisdiction can lie. *See Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams*, 697 F.2d at 1219. In such a challenge, a court assumes the truth of the facts alleged by plaintiff, thereby functionally affording the plaintiff the same procedural protection he or she would receive under Rule 12(b)(6)[7] consideration. *See Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams*, 697 F.2d at 1219.

A Rule 12(b)(1) motion may also challenge the existence of subject-matter jurisdiction in fact, apart from the pleadings. *See Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams*, 697 F.2d at 1219. In such a case, because a party challenges the court's "'very power to hear the case,'" the trial court is free to weigh evidence to determine the existence of jurisdiction. *Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). No presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. *See Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams*, 697 F.2d at 1219.

---

[7] "A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs.*, 7 F.3d at 1134; *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

If the facts necessary to determine jurisdiction intertwine with the facts central to the merits of the dispute, a court should find that jurisdiction exists and resolve any factual dispute on the merits because the jurisdictional attack would then closely mirror a challenge of the merits. *United States v. North Carolina*, 180 F.3d 574, 580 (4th Cir. 1999); *Adams*, 697 F.2d at 1219. A court need not examine jurisdiction in that manner when a plaintiff asserts the claim solely for the purpose of obtaining jurisdiction, or when a plaintiff raises a wholly insubstantial and frivolous claim. *Bell v. Hood*, 327 U.S. 678, 682–83 (1946).

### III. Analysis: Motion to Dismiss

USPS moves to dismiss Plaintiffs' Amended Complaint, arguing that the Court lacks subject-matter jurisdiction because, *inter alia*, Plaintiffs lack standing. USPS contends that Plaintiffs fail to establish a concrete injury in fact. Plaintiffs assert that they have standing because they have "suffered a concrete, in-fact injury that is directly traceable to [USPS's] conduct and that is likely to be redressed by a favorable decision here." (Am. Compl. ¶ 47.) For the reasons that follow, the Court finds that, as alleged, Plaintiffs lack standing because they have failed to plead facts that can establish an injury in fact.[8] The Court will, however, grant Plaintiffs leave to amend their Complaint.

#### A. Legal Standard: Standing

##### 1. The Three-Part Test Used to Evaluate Article III Standing

Article III, Section 2, clause 1 of the Constitution limits federal court jurisdiction to "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. As the Supreme Court for the United States has explained, an "essential and unchanging part of the case-or-controversy

---

[8] USPS also argues that the Court lacks subject-matter jurisdiction over Plaintiffs' claims because the FCRA does not waive the United States' sovereign immunity. Because the Court finds that Plaintiffs lack standing, the Court need not reach this question.

requirement" is that a plaintiff must establish Article III standing to sue. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). In *Spokeo, Inc. v. Robins*, the Supreme Court reiterated that, in order to establish standing, a plaintiff must have: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant;[9] and[,] (3) that is likely to be redressed by a favorable judicial decision.[10]" 136 S. Ct. 1540, 1547 (2016) (citing *Lujan*, 504 U.S. at 560–61).

As the party invoking federal jurisdiction, Plaintiffs bear the burden of properly alleging standing. *Lujan*, 504 U.S. at 560; *see also Balzer & Assoc., Inc. v. Union Bank & Trust Co.*, 3:09cv273, 2009 WL 1675707, at *2 (E.D. Va. June 15, 2009) ("On a motion to dismiss pursuant to Rule 12(b)(1), the party asserting jurisdiction has the burden of proving subject matter jurisdiction." (citing *Potomac R.R.*, 945 F.2d at 768). "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element." *Spokeo*, 136 S. Ct. at 1547 (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)). In a class action matter, courts analyze standing "based on the allegations of personal injury made by the named plaintiffs." *Beck v. McDonald*, 848 F.3d 262, 269–70 (4th Cir. 2017). "'Without a sufficient allegation of harm to the named plaintiff in particular, plaintiffs cannot meet their burden of establishing standing.'" *Id.* at 270 (quoting *Doe v. Obama*, 631 F.3d 157, 160 (4th Cir. 2011)).

---

[9] To show a causal connection, "the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'" *Lujan*, 504 U.S. at 560 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976)).

[10] A party may establish the third element of standing by showing "that the injury will be [likely] 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 561 (quoting *Simon*, 426 U.S. at 38, 43). A plaintiff cannot have standing where redressability of an injury is merely "speculative." *Id.*

## 2. Standard to Demonstrate an Injury in Fact

In *Spokeo,* the Supreme Court discussed the manner in which a plaintiff must allege "injury in fact" in order to establish standing for what courts call a "statutory violation" resulting in an "informational injury." The Supreme Court confirmed that, in order to establish an injury in fact, a plaintiff must demonstrate that he or she suffered "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo,* 136 S. Ct. at 1548 (quoting *Lujan,* 504 U.S. at 560). In doing so, the *Spokeo* court refined standing law by defining "particularized" and "concrete" with specificity.

Although not determinative of the outcome of this case, the *Spokeo* court first found that, for an injury to be "'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Spokeo,* 136 S.Ct. at 1548 (citing *Lujan,* 504 U.S. at 560 n.1). Thus, an "undifferentiated, generalized grievance" that all citizens share would not qualify as particularized. *Lance v. Coffman,* 549 U.S. 437, 442 (2007). "The fact that an injury may be suffered by a large number of people does not of itself make that injury a nonjusticiable generalized grievance." *Spokeo,* 136 S. Ct. at 1548 n.7. The proper inquiry is whether "each individual suffers a particularized harm." *Id.*

Second, the *Spokeo* Court stated that for an injury to be "concrete," it must be "de facto," meaning that it must be "real," and not "abstract." *Spokeo,* 136 S. Ct. at 1548 (quotation omitted). That said, an injury need not be "tangible" in order to be "concrete." *Id.* at 1549 (quotation omitted). An intangible injury may constitute injury in fact. *Id.* The *Spokeo* court noted that even the risk of real harm might satisfy concreteness. *Id.* In evaluating whether an intangible injury satisfies the "concreteness" requirement, the Supreme Court reiterated two important considerations: (1) history, which may reveal "whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a

lawsuit in English or American courts"; and, (2) the judgment of Congress, which "'has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before.'" *Id.* (quoting *Lujan*, 504 U.S. at 580 (Kennedy, J., concurring in part and concurring in judgment)).

With respect to this congressionally-defined, or statutory, standing, the *Spokeo* Court explained: "Article III standing requires a concrete injury even in the context of a statutory violation."[11] *Id.* Thus, a plaintiff "could not, for example, allege a bare procedural violation,

---

[11] *Spokeo* favorably discussed several cases that upheld congressional power to create a legally cognizable right to specific information, the deprivation of which would constitute a concrete injury sufficient to satisfy Article III. Many courts describe this statutory standing as flowing from an "informational injury." For instance, the Supreme Court explained in *Federal Election Commission v. Akins*:

> The "injury in fact" that respondents have suffered consists of their inability to obtain information—[including donor lists and campaign-related contributions and expenditures].... There is no reason to doubt their claim that the information would help them (and others to whom they would communicate it) to evaluate candidates for public office.... Respondents' injury consequently seems concrete and particular. *Indeed, this Court has previously held that a plaintiff suffers an "injury in fact" when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute.*

524 U.S. 11, 21 (1998) (citing *Pub. Citizen v. Dep't of Justice*, 491 U.S. 440, 449 (1989)) (emphasis added). In *Public Citizen*, relied on by *Akins*, the Supreme Court held that two advocacy organizations' failure to obtain information subject to disclosure under the Federal Advisory Committee Act "constitute[d] a sufficiently distinct injury to provide standing to sue." 491 U.S. at 449.

Other pre-*Spokeo* Supreme Court cases confirm that the violation of a statutorily-prescribed procedural right can constitute injury in fact in some circumstances. *See, e.g., Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373–75 (1982) (finding that housing-discrimination tester had standing to bring claims under the Fair Housing Act based on the "alleged injury to her statutorily created right to truthful housing information," even though the tester "may have approached the real estate agent fully expecting that [s]he would receive false information, and without any intention of buying or renting a home"); *see also Doe v. Pub. Citizen*, 749 F.3d 246, 263 (4th Cir. 2014) ("The Supreme Court consistently has held that a plaintiff suffers an Article III injury when [she or] he is denied information that must be disclosed pursuant to a statute, notwithstanding '[t]he fact that other citizens or groups of citizens might make the same

divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.* (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation . . . is insufficient to create Article III standing.")). Regarding the FCRA, the Supreme Court noted that "not all inaccuracies cause harm or present any material risk of harm." *Id.* at 1550. By way of example, the Supreme Court suggested that it would be "difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm." *Id.*

The Court also observed that in cases in which "harms may be difficult to prove or measure[,]" "the violation of a procedural right granted by statute can be sufficient . . . [and] a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified." *Id.* at 1549 (citing *Akins*, 524 U.S. at 20–25; *Pub. Citizen*, 491 U.S. at 449). A plaintiff may therefore suffer "a concrete informational injury where [she or] he is denied access to information required to be disclosed by statute, *and* [she or] he 'suffers, by being denied access to that information, the type of harm *Congress sought to prevent* by requiring disclosure.'" *Dreher v. Experian Info. Sols., Inc.*, 856 F.3d 337, 345 (4th Cir. 2017) (quoting *Friends of Animals v. Jewell*, 828 F.3d 989, 992 (D.C. Cir. 2016)). In such a situation, an informational injury can become constitutionally cognizable when "a person lack[s] access to information to which [she or] he is legally entitled *and* . . . the denial of that information creates a 'real' harm with an adverse effect." *Id.* at 345 (citing *Spokeo*, 136 S. Ct. at 1548; *Akins*, 524 U.S. at 21).

---

complaint after unsuccessfully demanding disclosure.'" (quoting *Pub. Citizen v. Dep't of Justice*, 491 U.S. at 449–50)).

## B. Plaintiffs Fail to Plead Facts that Establish an Injury in Fact

The Court must determine whether the facts Plaintiffs allege in support of their claim for a violation of 15 U.S.C. § 1681b(b)(2)(A) amount to an "'invasion of a legally protected interest' that is 'concrete and particularized.'" *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560). As explained below, the Court concludes that Plaintiffs' factual allegations do not currently satisfy *Spokeo*'s refined injury-in-fact requirement because Plaintiffs allege no concrete harm.

Plaintiffs assert that they suffered two distinct injuries: (1) "USPS failed to provide Plaintiffs with a stand-alone disclosure before procuring Plaintiffs' criminal background checks from GIS, violating 15 U.S.C. § 1681b(b)(2)," and depriving them "of information to which they are statutorily entitled"; and, (2) Plaintiffs "had their privacy illegally violated" when USPS procured their background checks, because USPS had no valid authorization to do so. (Am. Compl. ¶¶ 23, 30.)

In evaluating whether an intangible injury satisfies the "concreteness" requirement, this Court must look to the common law and to the judgment of Congress.[12] *Spokeo*, 136 S. Ct. at 1549. Plaintiffs do not identify an analogous common-law injury, and both parties focus their arguments on the judgment of Congress. The Court will also focus its analysis on the congressional intent of the FCRA and its "stand-alone" disclosure requirement. Because

---

[12] The Court must, of course, undertake this analysis because of the procedural nature of the statutory violation Plaintiffs assert. As discussed, in evaluating whether an intangible injury satisfies the "concreteness" requirement, the Supreme Court has identified two important considerations: (1) history, which may reveal "whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts"; and, (2) the judgment of Congress, which "'has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before.'" *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 580 (Kennedy, J., concurring in part and concurring in judgment)). The Court therefore considers the purpose of the FCRA to determine whether Plaintiffs have alleged a kind of harm that Congress sought to prevent.

Plaintiffs do not allege facts that bring their purported injury within the ambit of injuries Congress sought to prevent in passing § 1681b(b)(2), Plaintiffs fail to plead facts that establish an injury in fact.

### 1. The Purpose of the FCRA Generally

A central purpose of the FCRA is "to ensure 'fair and accurate credit reporting,'" *Spokeo*, 136 S. Ct. at 1545 (quoting 15 U.S.C. § 1681(a)(1)), and to "'promote efficiency in the banking system, and protect consumer privacy,'" *Dreher*, 856 F.3d at 346 (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007)). Through the FCRA, "Congress plainly sought to curb the dissemination of false information by adopting procedures designed to decrease that risk." *Spokeo*, 136 S. Ct. at 1550. "Congress intended that the FCRA be construed to promote the credit industry's responsible dissemination of accurate and relevant information and to maintain the confidentiality of consumer reports." *Thomas v. FTS USA, LLC*, 193 F.Supp.3d 623, 633 (E.D. Va. June 30, 2016).

### 2. The Purpose of 15 U.S.C. § 1681b(b)(2)(A)

As the Senate noted while passing § 1681b(b)(2)(A), that section

> permits employers to obtain consumer reports pertaining to current and prospective employees. The Committee is concerned, however, that this provision may create an improper invasion of privacy. Section 403 of this bill requires that employers provide prior written disclosure to current and prospective employees that their consumer reports may be procured in connection with their employment. Further, employers must obtain a specific or general written authorization prior to procuring such a report.

S. REP. NO. 104-185 at 35 (1995). From this statement, and a commonsense reading of the statute's plain language, one purpose of the "stand-alone" provision is to make the disclosure authorizing the background check obvious to the applicant. In other words, through § 1681b(b)(1), Congress sought to prevent employers from hiding the required disclosure among other provisions that could distract the applicant from the disclosure itself, and thereby result in

12

the applicant unknowingly authorizing an employer to obtain his or her background check. *See Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 887 (7th Cir. 2017), *cert. denied,* 138 S. Ct. 740 (2018) (concluding that the "stand-alone" disclosure requirement "is clearly designed to decrease the risk of a job applicant unknowingly providing consent to the dissemination of his or her private information"); *Shoots v. iQor Holdings US Inc.*, No. 15-CV-563, 2016 WL 6090723, at *7 (D. Minn. Oct. 18, 2016) (concluding that the "stand-alone" disclosure requirement is "(1) to make clear to prospective employees that a consumer report might be obtained, and[,] (2) prevent that disclosure from being hidden among other, innocuous provisions").

As one court has suggested, "[t]he *goal* of the stand-alone requirement is a substantive one: to ensure that certain information is in fact conveyed clearly to job applicants. The *means* chosen to implement that goal" speak to procedure: the stand-alone disclosure requirement "prescribes the physical format that the disclosure must take." *In re Michaels Stores, Inc., Fair Credit Reporting Act (FCRA) Litig.*, No. 2615, 2017 WL 354023, at *6 (D.N.J. Jan. 24, 2017). Thus, a harm Congress sought to prevent with § 1681b(b)(2)(A) was employers obtaining background checks from applicants who did not knowingly consent, which, Congress determined, would invade their privacy. The requirement that the disclosure is "clear and conspicuous" furthers this goal. The "stand-alone" requirement is one means Congress deemed necessary to ensure that the disclosure was in fact "clear and conspicuous." But an essential purpose of the section included ensuring that an applicant in fact knowingly consented to the employer accessing the applicant's private information through a background check.

Therefore, a job applicant could more readily demonstrate a sufficiently concrete injury if, for example, an employer failed to include a stand-alone disclosure, and the applicant signed

the disclosure not knowing that he or she was thereby authorizing the employer to obtain his or her background check.

### 3. Plaintiffs Do Not Allege that They Suffered the Type of Harm Congress Sought to Prevent

Plaintiffs do not plead facts supporting a reasonable inference that they suffered the "'type of harm *Congress sought to prevent* by requiring disclosure.'" *Dreher*, 856 F.3d at 345 (quoting *Jewell*, 828 F.3d at 992). Plaintiffs do not allege that they were *deprived* of any statutorily-required information. Instead, they correctly assert that the format of the information facially violated the FCRA. Plaintiffs also never claim that they were confused or distracted by the "extraneous" information included on the page when they read Form 2181-A. Nor do Plaintiffs contend that the disclosure was not "clear" to them or that it was not "conspicuous," as required by 15 U.S.C. § 1681b(b)(2)(A)(i).[13] Next, Plaintiffs do not allege that any of the extraneous information confused them or prevented them from fully

---

[13] Plaintiffs allege that:

> instead of being a clear and conspicuous disclosure contained in a stand-alone document, [Form 2181-A] attempts to eviscerate the consumer's right to statutory legal remedies when the FCRA is violated. The liability waiver language attempts to take clear advantage of the use of consumer information, leaving consumers with no legal power over the CRA, the information generated by the CRA, or how the information is potentially used against the consumer.

(Am. Compl. ¶ 40.) This, of course, is a legal conclusion not entitled to the assumption of truth. *See Mylan Labs.*, 7 F.3d at 1134.
    Although the Court views the facts alleged in the Complaint in the light most favorable to the plaintiff on this Rule 12(b)(1) Motion to Dismiss, Plaintiffs allege no facts supporting even an inference that Morris or Cotman believed that the liability waiver divested them of the legal power to vindicate their rights under the FCRA. Nor does the Complaint contain any allegation that the liability waiver or any of the other allegedly "extraneous" information on Form 2181-A confused Plaintiffs.
    Due to the paucity of factual allegations in the Complaint about how Plaintiffs *themselves* were affected by the formatting of Form 2181-A, the Court cannot reasonably infer that the "extraneous" information on Form 2181-A rendered the disclosure unclear or inconspicuous to Plaintiffs. Nor can the Court view these allegations unfavorably or against Plaintiffs by making

understanding the form.[14] Moreover, Plaintiffs do not allege that they would not have signed Form 2181-A or given their authorization to USPS to conduct a background check had the "extraneous" information not been there. Finally, Plaintiffs do not allege they were *not* confused, a negative inference which the Court declines to make when it must view all well-pleaded allegations in the light most favorable to Plaintiffs. *See Mylan Labs*, 7 F.3d at 1134.

The only factual allegations Plaintiffs plead regarding Form 2181-A are the contents of the form itself, that Plaintiffs signed it, and that USPS therefore ran background checks on Plaintiffs.[15] Plaintiffs have failed to allege that they were either unaware of the disclosure or uncertain of its meaning, which are among the harms Congress sought to prevent in passing

---

the negative inference that Plaintiffs did *not* believe that the liability waiver divested them of their FCRA rights. *Id.*

[14] Plaintiffs allege that "[t]he inclusion of a purported liability release in Form 2181-A would cause a *reasonable person* to believe they had experienced a change in legal position as a result of consenting to a liability waiver." (Am. Compl. ¶ 31 (emphasis added).) Plaintiffs then cite a handful of empirical studies for the broad propositions that "consumers were less likely to seek redress for their injuries if they signed a contract that included an exculpatory clause, even though the clause would likely be found unenforceable" and "consumers generally believe that exculpatory provisions are enforceable, even if they are clearly not, they are likely to seek less— if any—recompense for their injuries when businesses include these terms in contracts of adhesion." (Am. Compl. ¶¶ 32–34.)

Neither Plaintiffs' allegations about what a reasonable person would believe nor general research findings—however accurate or persuasive—can substitute for factual allegations about the specific harm Plaintiffs suffered. To establish standing, Plaintiffs must show that the injury they allege is "particularized," to them, meaning it "'must affect [them] in a personal and individual way.'" *Spokeo*, 136 S.Ct. at 1548 (citing *Lujan*, 504 U.S. at 560 n.1); *see also Beck*, 848 F.3d at 269–70. General allegations about a hypothetical "reasonable person" cannot alone confer standing on these Plaintiffs before this Court.

[15] In its Motion to Dismiss, USPS represents that the Plaintiffs' background checks accurately showed that they had no criminal history and that Plaintiffs were hired for the jobs for which they had applied. The Court does not consider these facts in ruling on the Motion to Dismiss and relies only on Plaintiffs' well-pleaded factual allegations. *See Martin*, 980 F.2d at 952 ("A motion to dismiss under Rule 12(b)(6) [which applies to this Rule 12(b)(1) Motion to Dismiss] tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990))).

§ 1681b(b)(2)(A). Accordingly, the Court cannot find on the facts as pled that the Plaintiffs have alleged any "'real' harm with an adverse effect" flowing from the alleged violation.[16]

To be clear, the Court does not foreclose the possibility that failure to comply with the "stand-alone" disclosure requirement *could* in some cases rise to the level of an injury sufficient to confer standing. Indeed, the plain language of § 1681b(b)(2) requires that an employer provide a disclosure "in a document that consists solely of the disclosure." 15 U.S.C. § 1681b(b)(2)(A)(i). Perhaps even a single additional factual allegation showing that Plaintiffs suffered the sort of harm Congress was seeking to prevent might suffice to establish standing.[17]

---

[16] Plaintiffs also contend that "because third party providers of information such as GIS would also likely believe that an exculpatory clause is enforceable, such a provision may induce these sources to be less careful in their provision of information, thereby magnifying the danger that an employer will make decisions based on incomplete or inaccurate information." (Am. Compl. ¶ 35.) However, Plaintiffs have pled no facts supporting the existence of this "likely" belief. Plaintiffs' passing conjecture, without facts supporting it, is "'hypothetical'" and does not establish an injury in fact. *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560).

[17] Plaintiffs rely heavily on *Thomas*, 193 F. Supp. 3d 623, in which the Court found that the plaintiff, Thomas, could establish standing for a violation of § 1681b(b)(2)(A). *Thomas*, however, does not control here because Thomas alleged factual allegations from which the court there could infer actual harm—he alleged not only that he did not receive a disclosure in a "stand-alone" format, as Plaintiffs do here, but that he never received a written disclosure *at all*. *Id.* at 628. Moreover, Thomas alleged that his background check contained numerous felony convictions incorrectly attributed to him and that he was denied continued employment as a result. *Id.* Thomas' failure to receive a written disclosure prevented him from correcting inaccurate information on his credit report, which the *Thomas* court concluded was an animating purpose of the FCRA. *Id.* at 633. Here, the Plaintiffs allege no facts supporting an inference that they suffered the sort of injury Congress sought to prevent when it enacted § 1681b(b)(2). To the extent Plaintiffs rely on a different type of harm Congress sought to prevent, they do not plainly allege what that harm is.

Plaintiffs' citations to a handful of other out-of-circuit cases also fail to persuade for the same reasons. *See Demmings v. KKW Trucking, Inc.*, No. 3:14-CV-494-SI, 2017 WL 1170856 (D. Or. Mar. 29, 2017); *Mix v. Asurion Ins. Servs. Inc.*, No. CV-14-02357-PHX-GMS, 2016 WL 7229140 (D. Ariz. Dec. 14, 2016); *Graham v. Pyramid Healthcare Sols., Inc.*, No. 8:16-CV-1324-T-30AAS, 2016 WL 6248309 (M.D. Fla. Oct. 26, 2016); *Reardon v. ClosetMaid Corp.*, No. 2:08-CV-01730, 2013 WL 6231606 (W.D. Pa. Dec. 2, 2013). In all of these cases, the plaintiffs alleged that their background checks contained incorrect information, they were not hired for the positions for which they applied, or both.

But if Plaintiffs seek to proceed on a case in which they affirmatively state they suffered no confusion or harm, they must do so unequivocally or at least directly. This Court, viewing the well-pleaded facts favorably to Plaintiffs, cannot make this unfavorable inference. The Court therefore concludes that Plaintiffs' spartan allegations as to the effects they experienced from USPS' failure to comply with the stand-alone disclosure requirement cannot establish standing.

## IV. Conclusion

For the foregoing reasons, the Court will grant the Motion to Dismiss. However, in part because of the most recent enunciation of standing law in this Circuit, *see Dreher*, 856 F.3d 337, the Court will grant Plaintiffs leave to amend their complaint.

An appropriate Order shall issue.

/s/
M. Hannah Lauck
United States District Judge

Date: 9/25/18
Richmond, Virginia